**Application of MARCO ISLAND AIRWAYS, Inc.**
Docket No. 770712-ACC.    Order No. 14410.
Florida Public Service Commission.

June 22, 1978.

Timothy J. Armstrong, Miami, for the applicant.

James D. Beasley, Tallahassee, for Florida Airlines, protestant.

The following commissioners participated in the disposition of this matter — PAULA F. HAWKINS, Chairman and Commissioners WILLIAM T. MAYO and ROBERT T. MANN.

BY THE COMMISSION.

Pursuant to notice, the commission by its duly designated hearing examiner, P. Michael Ruff, held a public hearing on this matter in Fort Myers on November 21, 1977.

By this application, Marco Island Airways, Inc. (Marco) seeks an extension of its Certificate No. 4 to transport passengers, baggage and cargo between Fort Myers and Miami and between Fort Myers, Marco Island and Miami. The applicant presently is authorized to provide Class 3 air carriage between Miami and Marco Island, and between Marco Island and Fort Myers, with a restriction against through service between Miami and Fort Myers by way of Marco Island. The applicant is not currently operating its authority to provide service between the cities of Fort Myers and Marco Island. The applicant seeks, in effect, to remove the restriction against through service between Miami and Fort Myers by way of Marco Island, as well as authority to engage in non-stop service directly between Fort Myers and Miami.

The applicant proposes to offer a commuter air service similar to that presently offered, with a minimum schedule of one non-stop flight each way between Fort Myers and Miami and one flight each way between Fort Myers and Miami with a stop at Marco Island per day. The proposed schedule is intended to complement the applicant's existing schedule between Miami and Marco Island, as well as the schedules of other air carriers operating between Miami and Fort Myers and northern points. This scheduling is designed to permit a businessman to travel between Miami and Fort Myers and return the same day, as well as to provide convenient connections for Fort Myers and Marco Island passengers originating at or destined to other parts of the United States or the Caribbean area. Marco now owns five Martin 404 aircraft. These 40-passenger aircraft are pressurized, air conditioned and radar equipped, and maintained according to pertinent federal air carrier regulations. The applicant has obtained permission from Fort Myers and Dade County airport authorities for the proposed flights and additional expenditures would essentially only be those necessary to open a station in Fort Myers, as well as the actual operating costs of the aircraft for the proposed scheduled flights. The applicant has liability insurance policy limits of seventy million dollars per occurrence, and thus possesses the necessary insurance coverage, as well as the financial stability and business and operational experience in aircraft operations to render it capable of immediately providing the proposed extended service.

Five public witnesses supported the application. Initially, a representative of the city of Fort Myers, Lee County and the Metropolitan Fort Myers Chamber of Commerce supported the application on the basis that the Martin 404 proposed to be used by the applicant is more modern and comfortable than the DC-3 used by protestant, Florida Airlines (FAL). This witness was aware of no recent complaints regarding the level of service provided by Florida Airlines, other than a general public desire that its equipment be updated. The witness was aware that both the applicant and the protestant were still in the process of seeking Civil Aeronautics Board approval to use the Martin 404 between Fort Myers and Miami. In addition to this witness, four additional public witnesses, consisting of businessmen and travel agents, primarily expressed a desire for the more modern aircraft to be used in the Fort Myers-Miami service. No substantial complaints were voiced concerning existing service by Florida Airlines other than somewhat vague contentions that the proposed schedule would be more convenient than the present schedule provided by that protestant. These same witnesses either admitted that they were also not actually familiar with the schedules proposed by the applicant for

Fort Myers-Miami service or could not specifically describe desired changes for present schedules. In summary, the applicant's witnesses' specific dissatisfaction with the service of Florida Airlines stems from its current use of the Douglas DC-3, which they apparently believe to be too antiquated and uncomfortable. No complaints regarding timeliness of flights, flight completion reliability, or other aspects of Florida Airlines' operations were expressed.

The protestant, Florida Airlines, presented evidence of its operations, equipment and facilities. As indicated in Exhibit 4, it is to provide three non-stop flights per day each way between Fort Myers and Miami (two flights per day on Saturdays), effective December 15, 1977; although, like the applicant, it may not use the Martin 404 between Fort Myers and Miami without obtaining a special exemption from the CAB. The protestant filed an application for that exemption one and a half months prior to the applicant's filing and Florida Airlines demonstrated through a late filed exhibit that CAB approval of use of that aircraft was issued November 22, 1977, the day after the hearing (Order No. 77-11-102, Docket No. 31350). Florida Airlines was shown to have the Martin 404 available for immediate use in the Fort Myers-Miami market and will do so on a year round basis with non-stop flights between those cities, thus effectively obviating the sole substantive basis for the complaints of the applicant's witnesses that the protestant's service beween these cities is unsatisfactory. Testimony of the protestant's witnesses who have fairly extensive experience in all aspects of the operation of commuter air lines, as well as the planning and implementation of Florida Airlines' routes and schedules over a number of years indicated that a substantial adverse effect is likely to result if another carrier is allowed to compete in this Fort Myers-Miami market. Evidence adduced by FAL shows that 26 percent of its total revenue is derived from this market. In the recent past it has arrived at a break-even point in this operation and expects to earn a modest profit in 1978. Evidence of passenger loadings introduced by FAL indicates that it has consistently had more than adequate seating available for passengers desiring to fly between the subject cities since its operations began. The protestant's contention that it only expects a very slight margin of profit on this operation in 1978, that only a slight dilution of that traffic might force it to discontinue service and that the volume of traffic between Fort Myers and Miami has actually declined (contrary to the applicant's description of growth) is corroborated and substantiated by the fact that the inauguration of Eastern Airlines' service from Fort Myers to Atlanta has diverted a great number of passengers who would otherwise have flown from Fort Myers to either Miami or Tampa by way of FAL to make connections with northern cities. The protestant's testimony to the effect that this

Fort Myers-Miami traffic has actually decreased since 1975 is further buttressed by the fact that National Airlines has reduced its service between the two cities. Thus, it is quite apparent that the applicant's projected boardings may be overly optimistic, and with FAL's demonstration that it only will exceed the break even' point in 1978 after four years of service, that approval of an additional certificated carrier would be economically unfeasible and render this market unprofitable for both. This would likely result in a reduction in quality, reliability or total service to the public in that market. The protestant has committed itself to immediate utilization of the more modern aircraft and in view of its history of equipment upgrading in that area of its operations in recent years, the record contains no indication that it will do other than honor that commitment.

From the foregoing, we conclude that although Marco Island Airways, Inc. possesses the needed experience in the field of air operations, has adequate insurance coverage and proposes to use aircraft which are adequate and desirable, it has not shown by competent, substantial evidence that it can consistently provide economic and adequate service to the communities involved, or that a need exists for such service, or that any regional or statewide transportation plan will not be adversely affected.

It is therefore ordered that the application of Marco Island Airways, Inc. for an extension of its air carrier certificate be and the same is hereby denied.

Chairman HAWKINS dissents.